

November 7, 2022

*Via CM/ECF*

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court
Mitchell H. Cohen U.S. Courthouse
400 Cooper Street, 4th Floor
Camden, N.J. 08101

>    Re:    In re Megan Gilberg,
>           **Case No. 19-27600 (ABA)**
>           Fee Applications for Joseph A. McCormick, J., P.A. (Initial Counsel for the Trustee); McDowell Law, P.C., (Successor Counsel for the Trustee); and Bort Law, Special Counsel for the Trustee
>           Hearing Date: November 10, 2022 @ 2:00 PM

Dear Judge Altenburg:

This matter is presently before the Court upon an objection (the "Kasen Objection") filed by Jenny Kasen, the Attorney for the Debtor ("Ms. Kasen"), Attorney for the Debtor to the First and Final Fee Applications for Joseph A. McCormick, Jr., P.A. ("Initial Counsel for the Trustee"); McDowell Law, P.C., ("Successor Counsel for the Trustee"); and Bort Law, Special Counsel for the Trustee.  Please accept this letter, in lieu of brief, in response to said Kasen Objection.

All services performed were itemized on the billing statements attached to the Fee Application of both the Initial Counsel for the Trustee and Successor Counsel for Trustee.  For purposes of this response to the Kasen Objection, the Applicants continue to rely upon the Supplemental Narratives that were filed in support of the Fee Applications, which address some of the issues raised in the Kasen Objection. The Fee Applications of Initial Counsel and Successor Counsel to the Trustee involve the representation of the Trustee for approximately three (3) years.  If the Court has questions as to the services performed, we would be happy to provide additional information.

This case involved an individual Debtor who was in an ongoing divorce proceeding in the Court of Common Pleas of Montgomery County, Pennsylvania at the time of the bankruptcy filing. When the case was sent to the Initial Counsel for the Trustee, it was reviewed by Joseph A. McCormick, Jr. ("JM") and it was determined that Paul Pflumm ("PSP") would undertake primary responsibility for the file. However, JM would continue to monitor the file, consult, and handle such tasks as necessary. PSP performs services at a lesser rate than JM, reducing the administrative expenses of the Estate.

The services required by both Initial Counsel and Successor Counsel were caused to be

**McDOWELL LAW PC**

**In re Megan Gilberg,
Case No. 19-27600 (ABA)**
Page 2

more extensive because of the positions advocated by Ms. Kasen, as Counsel for the Debtor and to some extent, the complexities of an ongoing Pennsylvania divorce proceeding. It initially proved necessary to subpoena documents as seeking voluntary turnover from the Debtor proved to be difficult. As part of his investigation of the Debtor's financial affairs, the Trustee sought to review information regarding her Main Line marital home (the "Penn Valley Property"), an LLC, as well as stock, investment and/or retirement accounts. It proved necessary to subpoena both the Debtor and her estranged spouse. Financial information and divorce pleadings information was sought, by way of subpoena, from the Debtor's prior divorce attorney. Subpoenas were sent to a financial advisor and the CPA for the Debtor. Subpoenas were also sent to counsel for the Debtor's spouse for financial and lending information and to PNC Bank. Some of this could have been eliminated or reduced if Counsel for the Debtor had turned over complete documentation. However, it was incumbent upon the Trustee to become fully aware of the financial condition of the married couple so an informed decision could be made concerning equitable distribution.

As the Debtor refused to extend further the time to object to exemptions, the Trustee was compelled to object to the Debtor's contention in her Petition that her equitable distribution claim in the divorce proceeding was not property of the bankruptcy estate. Said equitable distribution interest was the only asset in the bankruptcy estate. In response, the Debtor filed a Motion to Compel Abandonment of the Equitable Distribution interest. The relief sought by the Debtor in this Motion was to cause the Trustee to "immediately abandon his interest in all scheduled assets and cause the above-captioned bankruptcy case to be closed." It was opposed by the Trustee.

The efforts of the Debtor in this regard were unrealistic and unsuccessful. This Court determined, in its September 15, 2020 Opinion (Docket Entry #55) that the Trustee's objection should be sustained.

The Debtor's statements regarding the Trustee's participation in the divorce discovery are misleading as they ignore the Trustee's efforts to become cognizant of the financial situation of the Debtor and her spouse, the Trustee's subpoenas of documents, and the informal and cooperative discovery done with the non-debtor spouse, Brian Gilberg. In fact, counsel for Brian Gilberg requested that the Trustee subpoena relevant documents that his client was unable to produce to him for different reasons, which was done.

As this Court noted in its September 15, 2020 Opinion, the Debtor was unrepresented in the divorce for much of this time. Ms. Kasen did not file an appearance in the divorce, although she later appeared to take an active position. To our knowledge, the Debtor was unrepresented in the matrimonial case until December, 2020, when we were informed she had obtained counsel under a program for low income litigants. Thus, substantial informal discovery and negotiations took place with the non-debtor spouse without the participation of the Debtor, whose financial interest in the outcome was limited to the Penn Valley Property that needed to be negotiated separately. At no time during this period did the Trustee attempt to negotiate on behalf of the Debtor or attempt to trade away any rights of the Debtor.

**McDOWELL LAW PC**

In re Megan Gilberg,
Case No. 19-27600 (ABA)
Page 3

At or near the beginning of Summer 2021, negotiations appeared to cease. Multiple communications were sent to Brian Gilberg's counsel were sent requesting responses. Later, it became apparent that Ms. Kasen had become involved in the negotiations without informing the Trustee.

Notwithstanding the indication in the September 15, 2020 Opinion that the Trustee may have to intervene in the divorce action to ensure that the estates's interest is properly protected, the entry of the September 24, 2020 Order associated with same, and the intervention of the Trustee in June, 2021 in the divorce proceeding, the Debtor negotiated and entered into a Property Settlement Agreement dated September 17, 2021 ("PSA") without allowing the participation of the Trustee. The PSA was not noticed as a Settlement in the Bankruptcy Court despite the September 24, 2020 Order. Instead, a copy of the executed September 17, 2021 Property Settlement Agreement was sent to the Trustee "for his review" "as a courtesy".

The PSA purported to equitably distribute the assets and liabilities of the parties and determining the share of the Bankruptcy Estate at $16,888.00. The Trustee is not accustomed to having the Debtor negotiate such a settlement on behalf of the Estate nor would he be permitted to do so. Such an action is inexplicable as Ms. Kasen is an experienced bankruptcy practitioner and was actively involved in the proceedings. Furthermore, she is licensed in Pennsylvania and had to be aware that the approval of the PSA would be automatic by the Court of Common Pleas as a result of filing, with no hearing on whether to grant approval at which the Trustee could raise objections.

The actions taken by Debtor's counsel left the Trustee with no alternative other than to Move to Set Aside the Property Settlement Agreement.

Thereafter, the Trustee was able to reach a settlement with the husband of the Debtor to resolve the Motion to Set Aside through a March 9, 2022 Addendum to the PSA. The addendum provided that the Bankruptcy Estate would receive $20,000.00 representing the Debtor's share of equitable distribution of assets other than retirement accounts and the marital home. Further, as the result of difficult tax issues raised by the Trustee's accountants, ERISA and the institution managing Brian Gilberg's IRA, the Bankruptcy Estate would also receive $20,000.00 in lieu of roll over of retirement accounts representing the Debtor's share of equitable distribution of said accounts. *See* December 20, 2021 correspondence annexed hereto. None of this was related to the Penn Valley property. This resolution was the subject of a Notice of Proposed Compromise filed on March 17, 2022.

The actions of counsel for the Trustee in this matter were affected by the consistently uncooperative positions advocated by Ms. Kasen on behalf of the Debtor. The Trustee had difficulty in obtaining complete document production and/or a realistic approach from the Debtor with respect to the Estate's interest in equitable distribution. This caused the Trustee to have concerns regarding the reliability of the portions of discovery received. Therefore, a more extensive subpoena process than normal was required just so the Trustee could complete his due

**McDOWELL LAW PC**

**In re Megan Gilberg,
Case No. 19-27600 (ABA)**
Page 4

diligence and evaluate the asset. Not surprisingly, this caused administrative expenses to increase. Some of the positions advocated by Ms. Kasen were unrealistic as when she asserted that the equitable distribution interest was not property of the estate and when she attempted to push through the PSA without even involving the Trustee in the negotiation, relegating him to a courtesy copy of the executed version, then objected repeatedly to any changes to the PSA.

It was necessary for the Trustee to react to these positions taken by the Debtor and to conduct due diligence to protect the rights of creditors and the Estate. It is ironic that the only party objecting to these Applications is the party that caused the Trustee to incur most of these expenses. It is submitted that this should be taken into account by the Court.

The Trustee is cognizant of the expenses in this matter and that the case is administratively insolvent. The Trustee has obtained a consent to a pro rata reduction of the professional fees and commissions to achieve a distribution to unsecured creditors of approximately $4,000.00, which will mean an approximate 10% distribution to creditors. This is contained in the Final Report of the Trustee previously filed with the Office of the United States Trustee.

Thank you for Your Honor's consideration of this matter. Please advise if your Honor desires appearances on the return date of the Fee Application.

    Respectfully submitted,

    McDowell Law, P.C.

    By: /s/ *Paul Pflumm*
        Paul Pflumm

PSP/nsp

Enclosure
cc:    Joseph D. Marchand, Trustee (via email)
        Jenny Kasen (via CM/ECF and email)
        Michelle Bobman (via email)

M:\Active Files\Marchand, Joseph  Chapter 7 Trustee\Gilberg\Fee App-McDowell\Response ltr to Court re objection to fee applications 11 04 22b.wpd

# McDOWELL LAW PC

**EXHIBIT**

December 20, 2021

Via Email Only (jkasen@kasenlaw.com)
Jenny Kasen, Esquire
Kasen & Kasen, P.C.
Society Hill Office Park
1874 E. Marlton Pike
Cherry Hill, NJ 08003

Re: In re Megan Gilberg,
Case No. 19-27600 (ABA).
Gilberg v. Gilberg,
Docket No. 2018-02142

Dear Jenny:

I am writing in response to your email earlier urging that Megan Gilberg's case be completed expeditiously.

I submit that the Trustee shares your desire to complete this case. I cannot help but observe that we might be completed already, if you had not shut the Trustee out of negotiations over the terms of the Property Settlement Agreement. In any case, the Trustee hopes to propose a solution to the problem of the taxation of the Estate's interest in Debtor's equitable distribution rights within the next couple of days. A spirit of compromise and working together to reach a consensual resolution will greatly assist all parties achieve their shared goal completing this case expeditiously.

Please do not hesitate to call to discuss a resolution of this matter.

Very truly yours,

/s/ *Paul Pflumm*
Paul Pflumm, Esq.

cc: Shelley Bobman, Esquire (via email)
Michael Bertin, Esquire
Joseph D. Marchand
Michael Infanti

M:\Active Files\Marchand, Joseph  Chapter 7 Trustee\Gilberg\Jenny Kasen ltr re resolving case 12 20 21.wpd